UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ELAINE PAGNANI,

                Plaintiff,

      V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                Defendant.

**REPORT AND RECOMMENDATION**

12-CV-1287
(NAM/VEB)

---

## I. INTRODUCTION

In December of 2008, Plaintiff Elaine Pagnani applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since March of 2008 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorney, Peter M. Margolius, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On June 26, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

---

[1] On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for benefits on December 5, 2008, alleging disability beginning on March 1, 2008. (T at 131-37, 138-40).[2] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 11, 2010, in Albany, New York, before ALJ Arthur Patane. (T at 28). Plaintiff appeared pro se. Plaintiff requested and received an adjournment to obtain an attorney. (T at 33-35). A follow-up hearing was held on August 24, 2010. Plaintiff appeared with a non-attorney representative and testified. (T at 41-58).

On September 8, 2010, ALJ Patane issued a decision denying Plaintiff's applications for benefits. (T at 15-27). The ALJ's decision became the Commissioner's final decision on June 25, 2012, when the Social Security Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, through counsel, timely commenced this action on August 15, 2012. (Docket No. 1). The Commissioner interposed an Answer on December 4, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on January 15, 2013. (Docket No. 10). The Commissioner filed a Brief in opposition on February 25, 2013. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

---

[2] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and that this case be remanded for further proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, March 1, 2008, and met the insured status requirements of the Social Security Act through December 31, 2011. (T at 20). The ALJ found that Plaintiff's asthma, Crohn's disease, dysthymic disorder, and generalized anxiety disorder were "severe" impairments. (T at 20). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 20-21).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, provided she had consistent access to restroom

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

facilities, was not in an environment that would increase her respiratory complaints, was limited to working with simple and detailed (rather than complex) instructions, and was not required to have repeated or frequent contact with the general public. (T at 21-23). The ALJ determined that Plaintiff was capable of performing her past relevant work as teaching assistant. (T at 23).

As such, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Act, from March 1, 2008 (the alleged onset date) through September 8, 2010 (the date of the ALJ's decision). (T at 23). As noted above, the ALJ's decision became the Commissioner's final decision on June 25, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff challenges the ALJ's finding that she retained the residual functional capacity to perform her past relevant work as a teaching assistant.

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

6

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

In this case, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a teaching assistant. The ALJ's analysis was sparse and conclusory, consisting of a single paragraph. (T at 23). The ALJ found "nothing about claimant's past relevant work as a teaching assistant that would increase her respiratory complaints, prohibit her from having steady access to a restroom, or require her to work with complex instructions or have frequent or repeated contact with the public." (T at 23). The ALJ did not provide any references to the *Dictionary of Occupational Titles* ("DOT") or citations to Plaintiff's testimony about her past relevant work.

There are several factors that undermine the ALJ's findings. Plaintiff testified that her job as a teaching assistant involved working with students with disabilities. (T at 43). She would assist the students with work as directed by the teacher. (T at 160). The ALJ recognized that Plaintiff would need consistent access to restroom facilities because of her Crohn's disease symptoms. (T at 21). However, the ALJ does not appear to have considered the fact that frequent and sudden urges to use the restroom would likely interfere with Plaintiff's ability to assist the student(s) with disabilities assigned to her care and

7

sudden onset of her condition potentially requiring immediate departure to the restroom could complicate the safety of the students. Minimally, it would be disruptive to the education of that student and (potentially) other students in the class. The ALJ appears to have assumed that having "consistent" access to restroom facilities would be sufficient to address any material disruption in Plaintiff's ability to serve as a teaching assistant. The record does not support this conclusion. The need to use the restroom frequently has been identified as a severe, non-exertional impairment. See, e.g., Dambrowski v. Astrue, 590 F. Supp.2d 579, 584 (S.D.N.Y.2008) ("[P]laintiff had an obvious nonexertional impairment that he claimed prevented him from working: his need to use the bathroom with unusual frequency.").

In addition, the DOT[5] offers two descriptions of a "teacher aide" position, both of which provide good reasons for questioning the ALJ's conclusion.

The first description is as follows:

TEACHER AIDE I (education) alternate titles: teacher assistant

> Performs any combination of following instructional tasks in classroom to assist teaching staff of public or private elementary or secondary school: Discusses assigned teaching area with classroom teacher to coordinate instructional efforts. Prepares lesson outline and plan in assigned area and submits outline to teacher for review. Plans, prepares, and develops various teaching aids, such as bibliographies, charts, and graphs. Presents subject matter to students, utilizing variety of methods and techniques, such as lecture, discussion, and supervised role playing. Prepares, administers, and grades examinations. Assists students, individually or in groups, with lesson assignments to present or reinforce learning concepts. Confers with parents on progress of students. May specialize in single subject area. May be required to have completed specified number of college education credits.

---

[5]The DOT, a publication of the U.S. Department of Labor, is a standardized compendium of occupations, with a summary of the customary activities performed.

DOT Code: 099.327-010.

The second position is described:

TEACHER AIDE II (education) alternate titles: teacher aide, clerical

    Performs any combination of following duties in classroom to assist teaching staff of public or private elementary or secondary school: Takes attendance. Grades homework and tests, using answer sheets, and records results. Distributes teaching materials to students, such as textbooks, workbooks, or paper and pencils. Maintains order within school and on school grounds. Operates learning aids, such as film and slide projectors and tape recorders. Prepares requisitions for library materials and stockroom supplies. Types material and operates duplicating equipment to reproduce instructional materials.

DOT Code: 249.367-07.

The ALJ did not cite either (or any) DOT description, so this Court cannot determine which (if either) of these descriptions the ALJ relied on. However, several of the tasks described are inconsistent with Plaintiff's RFC as determined by the ALJ. Frequent and sudden trips to the restroom would materially interfere with, for example, the ability to present subject matter to students, administer examinations, and (most importantly) maintain order within school and on school grounds. See DOT Code: 099.327-010 and DOT Code: 249.367-07.

The ALJ recognized that Plaintiff lacked the ability to work with "complex instructions," but did not reconcile this finding with his (implicit) conclusion that Plaintiff could "develop teaching aides, such as bibliographies, charts, and graphs" or "prepare a lesson outline and plan in an assigned area." DOT Code: 099.327-010. The ALJ also found that Plaintiff should not be required to have repeated or frequent contact with the general public, but did not reconcile this conclusion with his (again, implicit) finding that Plaintiff could "confer with parents on the progress of students." DOT Code: 099.327-010.

9

This Court cannot review the ALJ's analysis of these issues because the ALJ did not address them at all.

The Commissioner responds to the ALJ's lack of DOT analysis by arguing that Plaintiff could perform the teaching assistant duties as she had actually performed those duties. At step four of the sequential evaluation, the claimant will be found not disabled if she can perform her past relevant work, either as she actually performed it, *or* as it is generally performed in the national economy. See Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981).

However, the record undermines the argument. The following colloquy represents the entirety of the ALJ's examination of Plaintiff regarding her past relevant work as a teaching assistant:

> Q: And, and what did you do before that?
> A: Before substitute teaching, let's see. I – that probably was Questar III.
> Q: And what's that?
> A: That's also working with, with children with disabilities.
> Q: And what did you do?
> A: I was a teaching assistant.
> Q: And how long did you have that for?
> A: I think about five years.
> Q: Was that full-time?
> A: Yes.

(T at 43). Thus, if the ALJ was relying principally upon an analysis of Plaintiff's past relevant work as it was actually performed, as the Commissioner suggests, it is not clear how the ALJ obtained an adequate understanding of what her previous teaching assistant job actually required. In any event, the record does not contain substantial evidence to sustain the ALJ's conclusion in this regard.

"Pursuant to both case law and [SSR] 82-62, in order to determine at step four

whether a claimant is able to perform her past [relevant] work, the ALJ must make a *specific and substantial* inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." Kerulo v. Apfel, No. 98 CIV. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999)(emphasis added). Here, the ALJ made a *de minimus* inquiry and did not support his decision with citations to the DOT or other evidence to explain his conclusion that Plaintiff retained the RFC to perform her past relevant work - either as she actually performed it, *or* as it is generally performed in the national economy. Accordingly, a remand is required. In particular, the ALJ should reconsider and further develop the record concerning Plaintiff's ability to perform her past relevant work.

**3.     Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

This Court recommends that the Plaintiff be GRANTED judgment on the pleadings, that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: November 5, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Dated: November 5, 2013
      Syracuse, New York